IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>                              )<br>         v.                   )<br>                              )<br>SANDRA CHESTON                )<br>_____) | Cr. No. 06-122 (GK) |

### DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

Defendant, Sandra Cheston, through undersigned counsel, hereby respectfully submits this memorandum in aid of sentencing pursuant to Federal Rule of Criminal Procedure 32. Based on all the sentencing factors in this case, including the United States Sentencing Guidelines, Ms. Cheston respectfully asks the Court to sentence her to three years of probation.

### BACKGROUND

On May 9, 2006, the government filed a one-count Information charging Ms. Cheston with Interstate Transportation of Stolen Property in violation of Title 18 U.S.C. § 2314. On May 18, 2006, Ms. Cheston pled guilty, in accordance with a written plea agreement, to the Information. Ms. Cheston is scheduled to be sentenced before this Court on August 9, 2006, at 10:00 a.m.

### DISCUSSION

**I.      THE POST-BOOKER SENTENCING FRAMEWORK.**

Under Justice Breyer's majority opinion in Booker, the "district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing. See 18 U.S.C. § 3553(a)(4)." United States v. Booker, 543 U.S. 220, 264 (2005)

1

(Breyer, J.). While holding that district courts should still consider the Guideline calculations and ranges for sentencing purposes, the remedial majority in Booker held that courts must consider all the purposes of sentencing set forth in 18 U.S.C. § 3553(a). Pursuant to Booker, therefore, courts must treat the Guidelines as but one, among several, sentencing factors.

Pursuant to 18 U.S.C. §§ 3562 and 3553(a)–which were explicitly endorsed by the Supreme Court in Booker–sentencing courts should consider the need for the sentence imposed:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> © to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with the needed educational and vocational training, medical care, or other correctional treatment in the most effective manner.

Specifically, courts should "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" set forth above.

Section 3553(a) further directs sentencing courts to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the range of sentences available, the need to avoid unwanted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to any victims of the offenses charged.

Pursuant to 18 U.S.C. § 3661, also expressly endorsed by the Booker majority:

No limitation shall be placed on the information concerning the background, character,

and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purposes of imposing an appropriate sentence.

Section 3582 of Title 18 states that:

[t]he court, in determining whether to impose a sentence of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in Section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation.

Taken together, the directives of Booker, as well as Sections 3553, 3661, and 3582 of Title 18, make it clear that sentencing courts may no longer consider the Guidelines alone in determining the appropriate sentence. With respect to *departures* from the Guideline range, in particular, following Booker courts need not justify sentences outside the Guidelines by citing factors that take the case outside the "heartland." Rather, as long as the sentence imposed is reasonable and supported by the factors outlined in Section 3553, courts may disagree with the range proposed by the Guidelines in individual cases and exercise their discretion.

**II.    UNDER ALL OF THE RELEVANT SENTENCING FACTORS, MS. CHESTON SHOULD RECEIVE A SENTENCE OF PROBATION**

   A.    Statutory Provisions

Pursuant to the applicable statute, the maximum term of imprisonment for the offense at issue is 15 years.

   B.    Advisory Sentencing Guidelines

   *(I).    Applicable Guideline Range*

The Probation Office, consulting the 2005 edition of the Guidelines Manual, has concluded that the total offense level in this case is 10 and that Ms. Cheston's criminal history category is I, resulting in an advisory Guideline range of 6-12 months. This advisory sentence

falls in Zone B of the advisory Guidelines, which means that an alternative to incarceration would be an appropriate sentence under the advisory Guidelines.

    C.    Section 3553 Factors

As noted above, pursuant to 18 U.S.C. §§ 3562 and 3553(a) sentencing courts should consider the need for the sentence imposed 1) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; 2) to afford adequate deterrence to criminal conduct; 3) to protect the public from further crimes of the defendant; and 4) to provide the defendant with the needed educational and vocational training, medical care, or other correctional treatment in the most effective manner.

Section 3553(a) further directs sentencing courts to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the range of sentences available, the need to avoid unwanted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to any victims of the offenses charged. Specifically, courts should "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" set forth above.

    *I. Nature of the Offense*

While Ms. Cheston in no way wishes to diminish the seriousness of her offense, she notes that the crime to which she pled guilty was neither a crime of violence nor a drug-related offense. Though the amount of money Ms. Cheston took was significant, she immediately accepted responsibility for her actions and began paying the money back even before the government became aware of her actions. She understands that her behavior was by no means acceptable or

appropriate, and she understands that the community at large suffers when people in her position take such actions. However, on a relative scale, the nature of the offense was mild.

*II. Characteristics of the Defendant*

As the PSR indicates, Ms. Cheston comes from a loving and supportive family. Growing up as the oldest of six siblings instilled in her the role of caretaker, which made her a naturally well-adjusted mother and wife. Ms. Cheston is extremely close with her daughter, Samantha, whom she characterizes as her best friend. Though Samantha's father died in 1996, Ms. Cheston is now happily re-married and resides with her husband.

Ms. Cheston has been lucky enough to have many people in her life to support her. However, she has a number of obstacles to face on a daily basis which make her life challenging. Ms. Cheston's daughter, Samantha, developed Lupus in 1996, shortly after Mr. Cheston succumbed to cancer. Samantha must take medication every day to help maintain her physical health, and Ms. Cheston lives with the constant concern that her daughter might have to be hospitalized because Lupus is an unpredictable and chronic condition that could flare up at any minute. In addition, Ms. Cheston's husband suffers from a number of health problems which require daily medication.[1] Because the family does not have health insurance, the family must pay for the costly medications and doctor's visits out-of-pocket, which has been a severe financial strain as well as an emotional concern for them all.

In addition to the medical expenses, Samantha is a college student and relies on her mother to pay for her education and living expenses while she is not working. Ms. Cheston also

---

[1]  Ms. Cheston prefers that counsel not disclose the specifics of her husband's health conditions in this public court document.

financially supports her mother, paying for essentials such as food and electricity. There are many people who rely on Ms. Cheston for financial support, and she fears that if she were to cease working, these obligations would not be met.

While Ms. Cheston by no means blames her financial situation for her behavior as it relates to this case, her struggle with money does put her actions into context. Ms. Cheston sorely regrets what she has done and is ashamed of it. When her employer realized what she was doing, Ms. Cheston immediately accepted responsibility and worked out a plan to pay the money back. To her credit, she began paying back the money before the government even became involved. In fact, she has already paid back over $12,000, more than one-fourth of the total amount she took. It is her strong sense of remorse and wanting to do the right thing that caused her to do this, not a court order. Ms. Cheston has been cooperative with the government in this case and has been willing to do whatever she needs to do to ease the process.

*III. Appropriate Sentence*

Given all the circumstances, it would appropriate in this case to sentence Ms. Cheston to a period of probation of three years. The primary concern in this case is the money that was taken and the organization which suffered as a result. The remedy is for the Army Distaff Foundation to get its money back. Ms. Cheston has proven that she can and will pay restitution by already paying over one-fourth of the total amount back. The one and only way to ensure that restitution is paid is to allow her to work. A sentence of probation would allow the victim in this case to recover its money while simultaneously punishing Ms. Cheston and allowing the Court to keep an eye on her. In addition, sentencing Ms. Cheston to probation would prevent severe financial and emotional disruption to her husband and daughter, both of whom depend on her for

support. Finally, probation is appropriate because Ms. Cheston is not likely to re-offend, so the community would benefit more from having her work as a productive member of society and paying back her restitution than paying for her to be locked up in a facility somewhere, only worsening the financial woes of her family and the victims in this case.

Ms. Cheston does not object to the government's request that she refrain from working in a capacity that would give her access to financial accounts or finances. In anticipation that this might be a condition of her release, Ms. Cheston was careful to ensure that her current job does not give her any such access.

*IV. Restitution*

With respect to the Army Distaff Foundation's request that Ms. Cheston compensate it for legal expenses, Ms. Cheston submits that this request is inappropriate and that the legal expenses Army Distaff incurred should not be part of her restitution. Title 18 U.S.C. § 3663A(b)(1) requires that for offenses resulting in the "loss or destruction of property," the defendant must pay "the value of the property . . . less (ii) the value of any part of the property that is returned." The Supreme Court has determined that restitution is authorized "only for losses caused by the conduct underlying the offense of conviction." Hughey v. United States, 495 U.S. 411, 413 (1979). Subsequent court decision have established that restitution "must be based upon losses directly resulting from the defendant's criminal conduct." United States v. Barany, 884 F.2d 1255, 1261 (9th Cir. 1989); see also United States v. Onyiego, 286 F.3d 249, 256 (5th Cir. 2002) (holding that 18 U.S.C. § 3663A precludes the award of consequential damages and denying recovery of legal fees).

In this case, there is absolutely no basis for awarding legal fees. First, there is no

evidence that these legal fees were directly related to Ms. Cheston's actions. The PSR only mentions the request for legal fees once, and it simply states: "the Army Distaff Foundation incurred legal expenses totaling $14,998.54 because of Ms. Cheston's actions. Army Distaff Foundation is requesting that Ms. Cheston compensates them for their legal expenses." PSR at 5, ¶ 15. There is no documentation to prove this is the amount allegedly incurred, how it was incurred, or when it was incurred.[2]

Second, there is no explanation as to why Army Distaff incurred legal expenses in the first place. There is no civil action pending against Ms. Cheston in this matter, let alone any civil judgment, and that is likely because Ms. Cheston was amenable to paying the money back from the very beginning. The truth is that Ms. Cheston is required by statute to pay restitution in this case, and she would be required to do so whether or not Army Distaff hired any attorneys. Given that, Army Distaff need not have incurred any legal expenses whatsoever. Legal fees, therefore, can hardly be classified as a necessary expense that directly resulted from Ms. Cheston's actions, and she should not be required to pay them as part of her restitution.

## CONCLUSION

For the reasons set forth above, as well as for any others the Court may deem fair and reasonable, Ms. Cheston asks the Court to sentence her to three years of probation. Such a

---

[2] While the PSR mentions the legal fees in paragraph 15, it is not clear whether the Probation Office is recommending that Ms. Cheston pay this in restitution since the PSR does not mention them under the Restitution section on page 16. However, in the event that the Probation Office does request that the Court require Ms. Cheston to pay legal fees, Ms. Cheston submits that there is no evidence on the record verifying this amount, and that "the district court should not accept uncritically an amount recommended by the probation office." Barany, 884 F.2d at 1261.

sentence would be sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553.

Respectfully submitted,

A.J. Kramer
Federal Public Defender


_____/s/_____
Rita Bosworth
Assistant Federal Public Defender
625 Indiana Avenue, N.W.
Washington, D.C.  20004
(202) 208-7500 ext.126